UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CITLAND LIMITED,

                         Plaintiff,

   -against-

INTERNATIONAL TOBACCO
PARTNERS, LTD.,

                         Defendant.

------------------------------------------------------------x

Index No. 09-CV-3797 (ADS)(ARL)

AFFIDAVIT OF
JEFFREY AVO UVEZIAN

STATE OF NEW YORK  )
                           ) ss.:
COUNTY OF NASSAU  )

JEFFREY AVO UVEZIAN, being duly sworn, deposes and says:

1. Deponent is an officer and director of the Defendant, INTERNATIONAL TOBACCO PARTNERS, LTD. ("ITP") and as such I am fully familiar with the facts and circumstances had herein.

2. I submit this affidavit in support of the Defendant's motion which seeks an order of this Court vacating and setting aside the Entry of Default filed by the Clerk of this Court on the 6th day of January, 2010; and, which seeks a further order of this Court permitting the Defendant to serve and file its proposed Answer to the Plaintiff's Complaint; and, which further seeks the issuance of a temporary restraining order staying the enforcement of the Entry of Default pending the hearing and determination of this motion.

3. The Defendant is a domestic corporation organized and existing pursuant to the laws of the State of New York with a principal place of business located at 1010 Northern

Boulevard, Great Neck, New York.

4. The Defendant is engaged in the business of distributing cigarettes in various States located in the United States of America ("U.S.A."), which cigarettes are imported into the U.S.A. from various locations outside of the U.S.A.

5. The Plaintiff, CITLAND LIMITED ("CITLAND") and the Defendant's predecessor in interest, INTERNATIONAL TOBACCO PARTNERS, LLC ("ITP, LLC") entered into a Licensing Agreement dated on the 21st day of November, 2000, wherein CITLAND granted to ITP, LLC, "the exclusive right in the United States to use the Licensed Trademark [BOSTON] in conjunction with the sale of cigarettes pursuant to the Distribution Agreement attached hereto" (the "Licensing Agreement"). A copy of the Licensing Agreement is annexed hereto as Exhibit "2".

6. The Plaintiff and ITP, LLC also entered into a Distribution Agreement which is dated on the 21st day of November, 2000 (the "Distribution Agreement"), a copy of which is annexed hereto as Exhibit "3".

7. Deponent was an officer and director of ITP, LLC on November 21, 2000 and I was the signatory, on behalf of ITP, LLC, on each of these Agreements (see Exhibits "2" and "3").

8. The Distribution Agreement provides that ITP, LLC was appointed, "as [the] exclusive distributor and marketer of the [BOSTON] Cigarettes in the United States" (see Exhibit "3").

9. The Distribution Agreement also provides that, "CITLAND may not sell, convey, assign or otherwise convey its right to produce the [BOSTON] Cigarettes . . . unless

2

the Distributor (ITP, LLC) consents to such conveyance in writing . . . ." (see Exhibit "3").

10. The Distribution Agreement also provides that, "[i]n the event that CITLAND desires to increase the prices for the [BOSTON] Cigarettes, it shall provide to Distributor a notice setting forth the increased prices and containing reasonable documentation evidencing the necessity to increase such prices (a 'Price Increase Notice'). Distributor may at its option agree to the Price Increase Notice or terminate this Agreement" (see Exhibit "3").

11. The Distribution Agreement further provides that, "any dispute, difference or question arising between the parties concerning the construction, meaning or effect of this Agreement or any part thereof shall be settled by a single arbitrator mutually agreed upon . . . . and the decision of such arbitrator . . . . shall be final and binding upon the parties" (see Exhibit "3").

12. The Defendant purchased substantially all of the assets of ITP, LLC after the execution of the Licensing Agreement and after the execution of the Distribution Agreement. This purchase included the aforesaid Licensing Agreement and the aforesaid Distribution Agreement, so that the Defendant became the sole distributor of the BOSTON brand of cigarettes in the U.S.A. thereafter, pursuant to the terms and conditions of both of these Agreements.

13. In or about the latter part of 2003 or early 2004, the Plaintiff and the Defendant entered into an Agreement, which was entitled Contracts for Production of Cigarettes, with the CHARLESTON TOBACCO CORPORATION ("CHARLESTON"), which is a Phillipine corporation engaged in the business of manufacturing various brands of cigarettes (the "CHARLESTON Agreement"). The parties entered into this contract with CHARLESTON in order to have the BOSTON cigarettes manufactured at the CHARLESTON facilities in the

3

Phillipines. The terms of this Agreement solely refer to the obligations of CITLAND and ITP to CHARLESTON in regards to the manufacturing of the BOSTON cigarettes on behalf of the parties. This Agreement is not the Licensing Agreement (see Exhibit "2") nor is this Agreement the Distribution Agreement (see Exhibit "3") between CITLAND and ITP. A copy of the letter agreement renewing the CHARLESTON Agreement as of September 9, 2006 is annexed hereto as Exhibit "4".

14. During the period of time during which the Licensing Agreement and the Distribution Agreement have been in effect, since on or about November 21, 2000 to date, CITLAND would purchase the blend of tobacco for the production of the BOSTON cigarettes, ship the blend of tobacco to CHARLESTON (after 2003), in the Phillipines, where the BOSTON cigarettes were manufactured and thereafter arrange for CHARLESTON to ship the finished BOSTON cigarettes to the Defendant to a public warehouse located in Jacksonville, Florida.

15. The Defendant would then distribute (sell) the BOSTON cigarettes to various dealers in various States in the U.S.A.

16. CITLAND would issue an invoice to the Defendant for each shipment of the cigarettes prior to the shipping date from CHARLESTON in the Phillipines to the Defendant in Jacksonville, Florida. The invoices included the proviso that, "payment to be effected 100 days after the date on the bill of lading" (see the Invoice Exhibits annexed to the Plaintiff's Complaint as Exhibit "A").

17. According to the Declaration of the attorney for the Plaintiff, which was filed in support of the Plaintiff's Request for Entry of Default against the Defendant (the "Default Papers"), this lawsuit was commenced by the service of the Plaintiff's Summons and Complaint

4

upon the Defendant by service of the Summons and the Complaint upon the office of the Secretary of State of the State of New York ("Secretary of State") in Albany, New York, on or about September 11, 2009.

18. The Defendant was never personally served with a copy of the Plaintiff's Summons and Complaint pursuant to the applicable statutes mandating the manner of service upon a domestic corporation, nor has the Defendant ever been served with or received a copy of the Plaintiff's Summons and Complaint from the Secretary of State by mail or otherwise.

19. On or about September 16, 2009, SCHNEIDER MITIGATION GROUP ("SCHNEIDER") of Fairfax, Virginia, contacted deponent. SCHNEIDER is a business entity which assists parties in resolving disputes through mediation or otherwise. SCHNEIDER advised deponent that CITLAND had filed this lawsuit and it sought to become involved in an attempt to reach a resolution of these issues without Court involvement.

At that time, the Plaintiff and the Defendant were being jointly represented in a legal proceeding in Virginia by an attorney named WALTER LUERS, ESQ.

At that time, I advised Mr. LUERS of my conversation with SCHNEIDER and I furnished him a copy of the Summons and Complaint which had been sent to me by SCHNEIDER.

I inquired of Mr. LUERS as to whether it was necessary for ITP to undertake any action in this lawsuit at that time. In response, Mr. LUERS asked me whether ITP had been served by CITLAND with the Summons and Complaint. When I informed Mr. LUERS that ITP had not been served with the Summons and Complaint, he advised me that ITP did not have to take any action with regard to this lawsuit as the, "clock doesn't begin to run until you are

personally served". At that time, I was unaware that ITP had been served through service upon the Secretary of State.

20. Relying upon the legal advice that I received from Mr. LUERS, deponent took no further action in this regard. Thereafter, I was not surprised when, to my knowledge, ITP was never served with the Plaintiff's Summons and Complaint. I never expected that CITLAND would actively pursue this litigation.

I felt that the filing of the Summons and Complaint by the Plaintiff was merely a further negotiation tactic by CITLAND to engender a favorable result in the negotiations with ITP regarding the disputed invoices. Indeed, I firmly believed that CITLAND filed this lawsuit in an attempt to strong arm ITP into acquiescing to CITLAND's demands for payment of the invoices to which ITP had objected and disputed.

Similar disputes regarding the terms of pricing, delivery and payment between CITLAND and ITP had arisen in the past. On those occasions, CITLAND had also threatened to take legal action in order to obtain a more favorable resolution of those disputes for CITLAND. In fact, it had used the threat of legal action as a negotiation tactic to try to force ITP to agree to its terms and assent to its demands.

With regard to these prior disputes, CITLAND had not actively pursued or gone forward with the threatened legal action. Indeed, CITLAND and ITP had always settled their disputes and had continued their business relationship under the Licensing Agreement and the Distribution Agreement. I believed that the present dispute would be worked out in the same manner without resort to legal action.

Moreover, I did not expect CITLAND to serve the Summons and Complaint and

6

pursue this lawsuit because I knew that the Plaintiff was aware that the parties had agreed, under the Distribution Agreement, that any disputes would be submitted to arbitration.

21. ITP was not aware that the Summons and Complaint had been served upon the Defendant by service upon the Secretary of State until ITP's attorney learned of the Default Papers. At the time that I was notified of the Default Papers by my attorney, on or about January 4, 2010, it was discovered that ITP inadvertently failed to notify the Secretary of State that the address of the agent designated to receive service of process on behalf of ITP had changed.

The address of this agent (MICHAEL W. HOLLAND, ESQ.) was his former address (133 Hillside Avenue, Williston Park, New York) and not his present address (421 Willis Avenue, Williston Park, New York). ITP inadvertently failed to update its agent's address with the Secretary of State. Deponent did not intentionally fail to provide the correct address to the Secretary of State. Since this error was discovered, deponent has taken the necessary steps to provide the Secretary of State with the agent's correct address.

22. It was not deponent's intention that ITP would fail to answer the Summons and Complaint. I was unaware that ITP's time to answer the Complaint had begun to run when the Plaintiff served the Secretary of State because as far as I knew the Summons and Complaint had never been served upon ITP. Based upon the legal counsel provided to me by Mr. LUERS, I verily believed that ITP did not have to take any action until it was personally served with the Summons and Complaint by the Plaintiff.

If I had been aware that ITP had been served by service upon the Secretary of State, ITP certainly would have submitted an answer to the Complaint.

23. In early 2009 and continuing to the present time, the parties have had

7

ongoing disputes over the terms, the manner of payment and the amounts due to CITLAND in each of the ten (10) invoices which are annexed to the Plaintiff's Complaint as Exhibit "A".

During this time period, without notice to ITP, CITLAND was constantly changing the terms of the invoices, the fees charged to ITP and its computation of the unit price of the tobacco products. Although CITLAND increased the prices for BOSTON Cigarettes, it did not provide to ITP a notice setting forth the increased prices and containing reasonable documentation evidencing the necessity to increase such prices.

CITLAND appeared to be arbitrarily adding fees, charges and penalties to the amounts demanded from ITP in the invoices without explanation, factual basis or documentation as to where these additional costs were coming from and why ITP was responsible for them. ITP disputed these invoices and objected to the inclusion of these fees, charges and penalties, which included management fees, financing fees, attorney fees, bank charges, interest charges, as well as other fees, charges and penalties.

ITP repeatedly requested from CITLAND an explanation of and documentation supporting these fees, charges and penalties and requested corrected invoices to reflect the actual charges allegedly incurred by CITLAND. ITP repeatedly questioned the manner in which CITLAND computed the unit price charged to ITP in the disputed invoices for the tobacco products at issue and requested explanation and documentation of the basis for this computation. CITLAND failed to provide the explanations or documentation requested by ITP.

CITLAND has continuously refused to disclose the manner in which CITLAND computed the unit pricing of the cigarettes contained in each invoice, which price was charged to ITP on each of the master cases of cigarettes included in each of these ten (10) invoices.

8

CITLAND has continuously refused to divulge this information to ITP although this information has been repeatedly requested by ITP.

CITLAND refused to disclose the price it paid for the tobacco products, its shipping/transportation costs, its manufacturing costs and other unknown costs which were allegedly incurred by CITLAND in order to produce the cigarettes and deliver these cigarettes to the Defendant at the public warehouse in Jacksonville, Florida. Instead, it apparently sought to pass these alleged costs onto ITP without explanation or documentation.

In some instances, it appeared that CITLAND was double billing ITP for the same tobacco products. For example, in reviewing these ten (10) invoices, this Court will observe that CITLAND submits two (2) separate invoices to the Defendant for each shipment of cigarettes although each of these two (2) invoices refers to the same tobacco product. In reference to the November 18, 2008 shipment, the Court will note that Invoice Number CIG/26 lists the tobacco products with a unit price of $105.10 with a total amount due on this invoice of $81,452.50. Invoice number MF/CIG26, of the same date, lists the same tobacco products with a unit price of $21.86 with a total amount due of $16,941.50 on this invoice. Therefore, Defendant was asked to pay the total amount due on both of these invoices of $98,934.00 for this shipment of tobacco.

CITLAND advised the Defendant that each of the additional invoices beginning with the letter "MF" were CITLAND's charges to the Defendant for management fees, attorneys fees, bank charges, interest charges and other similar charges allegedly incurred by CITLAND during each separate transaction. CITLAND has continuously refused to provide the Defendant with any documentation in support of these additional charges. The Defendant has never agreed to pay for these additional charges allegedly incurred by CITLAND (see Exhibit "A" annexed to

9

Plaintiff's Complaint).

On the MF/CIG27 invoice, dated February 28, 2009, CITLAND included five (5) penalty charges imposed by CHARLESTON by reason of the failure of CITLAND and ITP to meet a manufacturing quota pursuant to our Agreement with CHARLESTON (see Exhibit "A" annexed to Plaintiff's Complaint). The CHARLESTON Agreement was signed by both CITLAND and ITP, each of whom would be equally responsible to pay these penalty charges (see Exhibit "4"). Instead, CITLAND attempts to impose all of these penalty charges upon the Defendant.

Each of these issues were ongoing disputes between the parties which were solely related to CITLAND'S improper inclusion of these unwarranted additional fees, costs, charges and penalties in each of these invoices, which ITP had never agreed to pay to CITLAND. The Plaintiff was seeking to pass along to ITP all of the alleged additional fees, costs, expenses and charges allegedly incurred by CITLAND which ITP had never agreed to pay and which ITP was not responsible to pay.

24. On July 20, 2009, DEREK BANKS ("BANKS"), who is the principal owner of CITLAND, sent an e-mail to deponent wherein he stated that, "as per the contract, if there is a dispute on issues like this, arbitration is necessary. So I think this is the only way now to settle this issue".

BANKS sent a follow-up e-mail to deponent wherein he stated, "Kindly nominate your arbitrators within 14 days so we can settle this issue once and for all". A copy of both e-mails are annexed hereto as Exhibit "5".

These e-mails reflect the existence of the ongoing disputes between the Plaintiff

10

and the Defendant regarding the terms, the manner of payment and the payment of these ten (10) invoices.

In addition, the e-mail from BANKS to deponent reflects an acknowledgment by the Plaintiff that these disputes were to be resolved through arbitration, as provided in the Distribution Agreement (see Exhibit "3"), and not through litigation before this Court or before any other Court as alleged by the Plaintiff in its Complaint.

25. Many of the allegations set forth in the Plaintiff's Complaint are entirely unfounded and in some cases are outright misstatements.

26. The Defendant has never imported or distributed any brands of tobacco products in this judicial district at any time since November 21, 2000 to date.

27. The Plaintiff and the Defendant have never entered into any Agreement wherein the parties agreed that this judicial district or any other judicial forum would be the sole forum for any litigation relating to any "Agreement". In point of fact, the parties agreed that any disputes concerning the Distribution Agreement would be submitted to arbitration (see Exhibit "3").

28. The Plaintiff and the Defendant never entered into any "Agreement" on or about December 11, 2001 as described in paragraph designated "5" of Plaintiff's Complaint. Upon information and belief, the "Agreement" referred to by the Plaintiff in paragraph designated "5" of the Complaint is the CHARLESTON Agreement which is not an agreement between the Plaintiff and the Defendant (see Exhibit "4").

29. The Plaintiff and the Defendant never entered into any "Agreement" wherein the parties agreed that the prevailing party in any litigation would be entitled to attorneys

fees, nor have the parties ever entered into any "Agreement" in which the parties established the United States District Court for the Eastern District of New York as the exclusive forum in which any dispute between the parties would be resolved.

30. The Plaintiff and the Defendant never entered into any "Agreement" which included the terms which are set forth in paragraph designated "7" of the Plaintiff's Complaint. The terms of the "Agreement" which are referred to in the paragraph designated "7" of the Complaint include the obligations undertaken by CITLAND and ITP in the Agreement with CHARLESTON (see Exhibit "4"). The terms of the "Agreement" which are referred to in the paragraph designated "7" of the Complaint do not refer to any terms of any Agreement between CITLAND and ITP.

31. The Defendant is not in material breach of any "Agreement" between the Plaintiff and the Defendant. Likewise, the Defendant is not in material breach of the non-existent "Agreement" which is alleged to exist by the Plaintiff in its Complaint.

32. The Defendant has repeatedly disputed and taken issue with each of the ten (10) invoices which are annexed to the Plaintiff's Complaint as Exhibit "A" since the time that the Defendant received each of these invoices from the Plaintiff, which disputes continue to the present day.

33. The Defendant cannot be in breach of a non-existent "Agreement". The Plaintiff cannot enforce a non-existent "Agreement".

34. The Defendant has not resold the cigarettes which were delivered to ITP by CITLAND as is alleged by the Plaintiff in paragraph designated "19" of the Complaint. The Defendant received three thousand four hundred forty eight (3,448) master

cases ("MC's") of cigarettes from CITLAND as is set forth in the ten (10) invoices which are annexed to the Plaintiff's Complaint as Exhibit "A".

The Defendant presently has three thousand two hundred one (3,201) MC's under bond and fifty four (54) MC's not under bond at the "GRIMES LOGISTICS" warehouse in Jacksonville, Florida. A copy of the GRIMES warehouse receipts (as of 1/7/10), which demonstrate these facts, are annexed hereto as Exhibit "6".

The Defendant has sold two hundred thirty three (233) MC's of the BOSTON inventory in order to pay GRIMES for the monthly warehousing and storage charges incurred in maintaining these various shipments of cigarettes under the ten (10) invoices.

35.   The Plaintiff was advised of these facts and was aware that these cigarettes were located at the GRIMES warehouse at the time that the Summons and Complaint were filed with this Court.

36.   The Defendant requests that this Court issue a temporary restraining order which will enjoin the Plaintiff from enforcing the Entry of Default and pursuing a judgment by default against the Defendant pending a hearing and determination of this motion.

37.   The Defendant will be irreparably damaged if the Plaintiff is permitted to obtain a judgment by default and execute against the Defendant's assets prior to this Court conducting a hearing and making a determination upon this motion as the Plaintiff is seeking a money judgment of $524,028.55 together with interest and attorneys fees against the Defendant. Payment of such a judgment by the Defendant would be impossible and result in the closure of its business.

38.   The affidavit of deponent, the Affirmation of MICHAEL W. HOLLAND,

13

ESQ. and the Memorandum of Law submitted in support of this motion adequately demonstrate that the Defendant is likely to succeed upon the merits in this lawsuit.

39. When this Court balances the equities between the parties in determining the impact of the issuance of the temporary restraining order when weighed against the non-issuance of the temporary restraining order, the sole conclusion that this Court must reach is that the equities strongly favor the issuance of the temporary restraining order in order to maintain the status quo in this lawsuit pending the hearing and determination of this motion.

40. Deponent is proceeding by order to show cause rather than by notice of motion by reason of the urgency of the Defendant's present situation and the Defendant's need for the issuance of a temporary restraining order pending the hearing and determination of this motion.

41. The Defendant has not sought nor is the Defendant seeking the same or similar relief requested herein before this Court or before any other Court or tribunal of competent jurisdiction at any time heretofore.

WHEREFORE, deponent respectfully requests that this Court issue an order granting the relief sought by the Defendant in this motion.

JEFFREY AVO UVEZIAN

Sworn to before me
this 22nd day of January, 2010

Notary Public

MICHAEL W. HOLLAND
NOTARY PUBLIC, State of New York
No. 30-4505347, Nassau County
Term Expires June 30, 20__

14